IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PEPPERS UNLIMITED, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:18-cv-01001-P |
| TOMAS TRUJILLO d/b/a | § | |
| CARMELITAS ORIGINAL | § | |
| SALSAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Tomas Trujillo's ("Defendant") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and in the Alternate to Transfer Venue (ECF No. 8), and Plaintiff Peppers Unlimited, Inc.'s ("Plaintiff") Response (ECF No. 11). Having considered the motion, related briefing, and applicable law, the Court finds that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and in the Alternate to Transfer Venue (ECF No. 8) should be and is hereby **DENIED**.

## I. BACKGROUND[1]

Plaintiff is a Texas-based corporation organized and existing under the laws of the State of Texas with its principal place of business located in Grand Prairie, Texas. Pl.'s

---

[1] Unless otherwise noted, the facts in this section are taken from Plaintiff's Complaint (ECF No. 1), as the Court must take all uncontroverted allegations as true. *See Abramov v. Otis Elevator Co.*, No. 3:11-cv-440-D, 2011 WL 5081560, at *2 (N.D. Tex. Oct. 25, 2011) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam)).

Compl. at 2, ECF No. 1. Plaintiff imports and distributes canned food products. Pl.'s Br. Opp. MTD 2, ECF No. 12. Defendant is an individual citizen of California doing business as Carmelitas Original Salsas with its principal place of business in San Martin, California. Compl. at 2. Defendant contacted Plaintiff in late 2015 to inquire about purchasing jalapeños, tomatillos, and other products. *Id.*

From February 2016 to May 2016, Defendant sent Plaintiff several orders for products. *Id.* at 3. The parties' agreement stated that the products would be shipped from Mexico to Plaintiff in Laredo, Texas, where they would be inspected by the FDA. Following release by the FDA and payment by the Defendant, Defendant would take possession of the products. *Id.* Pursuant to the agreement, Plaintiff shipped the products to Laredo, Defendant wired payments to Plaintiff's bank, Pegasus Bank in Dallas, Texas, and the products were subsequently released to Defendant. *Id.*

In May 2016, Defendant submitted five orders for products totaling at least $83,160.00 from Plaintiff. *Id.* Plaintiff shipped the products to Laredo, Texas, but Defendant refused to pick up or pay for the products. As a result, Plaintiff incurred additional costs for storage and transportation of the products to its principal place of business in Grand Prairie, Texas. *Id.* Defendant also rejected products he received several months prior, forcing Plaintiff to buy those products back from Defendant and ship them to Grand Prairie. *Id.* Plaintiff seeks to recover losses associated with these alleged breaches of contract by Defendant. *Id.*

## II. LEGAL STANDARDS

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action where the Court lacks personal jurisdiction over the defendant. On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that a nonresident defendant is subject to the Court's jurisdiction. *Jones v. Petty—Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1067 (5th Cir. 1992). "The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985). All conflicts between the facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. *Cent. Freight Lines, Inc. v. APA Transp. Corp.,* 322 F.3d 376, 380 (5th Cir. 2003).

In establishing personal jurisdiction, two conditions must be met: (1) the nonresident must be amenable to service of process under Texas' long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the Due Process Clause of the United States Constitution. *Jones,* 954 F.2d at 1067. Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Id.* at 1067–68 (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990)). To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it would reasonably anticipate

being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *Id.* at 1068 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980); *Hanson v. Denckla,* 357 U.S. 235 (1958); *International Shoe Co. v. Washington,* 326 U.S. 310 (1945)).

The "minimum contacts" test can be met by contacts giving rise to either specific or general jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cnty. Asphalt, Inc.,* 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. Ruhrgas,* 182 F.3d 291, 295 (5th Cir. 1999) (citation omitted). Specific jurisdiction exists when the cause of action arises from the nonresident defendant's contacts with the forum state. *Gundle,* 85 F.3d at 205. In either context, the court considers the totality of the circumstances in conducting the minimum contacts analysis; no single factor is determinative. *Stuart,* 772 F.2d at 1192.

### B. Venue

Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). If venue is laid in the wrong division or district, the district court shall either dismiss or transfer the case to any district or division in which the action could have been brought. 28 U.S.C. § 1406(a). In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue, the court must view all facts in a light most favorable to the plaintiff. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237–38 (5th

Cir. 2009). The court may look to the facts in the complaint and affidavits or any other evidence submitted by the non-moving party to inform its decision in a Rule 12(b)(3) motion to dismiss or transfer. *Id.* at 238 (citing *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1138–40 (9th Cir. 2004)).

### III. ANALYSIS

#### A. The Court has specific personal jurisdiction over Defendant.

1. <u>Defendant has several contacts with the State of Texas.</u>

To establish this Court's personal jurisdiction over Defendant, Plaintiff must make only a prima facie case of jurisdiction. *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 342-43 (5th Cir. 2004). Since the Court did not hold an evidentiary hearing, any conflict in jurisdictional evidence is to favor Plaintiff. *Id.* The Court only looks to contacts Defendant had with Texas, as any unilateral actions by Plaintiff in Texas are irrelevant to the inquiry regarding Defendant's contacts with Texas. *See McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir. 2009).

It is undisputed that Defendant had the following contacts with Texas:

- Defendant contacted Diego Lorenzo, the Vice President of Peppers Unlimited, Inc. and located in Texas, to inquire about sample products and pricing. Pl.'s App. Ex. A ¶ 9, ECF No. 13.

- Defendant filled out a credit application for Intermex Products USA, an affiliate of Plaintiff, which explicitly provides that the Credit Agreement would be performed in Grand Prairie, Texas. Pl.'s App. Ex. A-3, ECF No. 13.

- Defendant emailed Plaintiff multiple times about Defendant's employees in Texas who could accept shipments and store canned good. Pl.'s App. Exs. A-4 & A-7, ECF No. 13.

- Defendant offered to come to Texas to sample goods and was given Plaintiff's address in an email. Pl.'s App. Ex. A-10. ECF No. 13.

- Defendant received a pricing sheet stating that goods were to be delivered "FOB Laredo TX." Pl.'s App. Ex. A-6, ECF No. 13.

- Defendant emailed Diego Lorenzo that Carmelita's values its business relationship and looks forward to a long-lasting business partnership with Plaintiff. Pl.'s App. Ex. A-5, ECF No. 13.

- Defendant received multiple invoices from Plaintiff that listed Plaintiff's address in Grand Prairie, Texas, and that products were to be picked up in Laredo, Texas. Pl.'s App. Ex. A-8, ECF No. 13.

- According to the parties' agreement, Defendant was to make payments to Plaintiff at Pegasus Bank in Dallas, Texas. Compl. ¶ 8.

2. <u>Defendant's contacts with Texas demonstrate the minimum contacts necessary to establish specific personal jurisdiction.</u>

"[A] nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Cent. Freight,* 322 F.3d at 382 n. 6. The question at the core of the minimum contacts inquiry is whether the defendant "reasonably anticipates being haled into court." *McFadin,* 587 F.3d at 759. The defendant "must not be haled into a

jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Id.* (citing *World–Wide Volkswagen Corp.,* 444 U.S. at 297). "A single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Intern., Inc. v. OAO Gazprom,* 481 F.3d 309, 311 (5th Cir. 2007) (citing *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999)).

The Supreme Court has explained that resolving the questions of personal jurisdiction requires a "highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479, 105 S. Ct. 2174, 2185 (1985) (internal quotations omitted). The Supreme Court highlighted the relevant factors for determining whether a defendant purposefully established minimum contacts: "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* Where the contract is to be performed is a "weighty consideration" in the personal jurisdiction analysis. *Command–Aire v. Ontario Mechanical Sales and Serv. Inc.,* 963 F.2d 90, 94 (5th Cir. 1992).

Several factors lead the Court to determine that Defendant has sufficient minimum contacts with the state of Texas: the place of payment was in Texas, Defendant's communications with Plaintiff provided notice that Plaintiff was a Texas corporation, Defendant was to take title to the goods in Texas, and Defendant established a business

relationship with Plaintiff, a Texas corporation. Defendant claims he was unaware that Plaintiff was a Texas corporation; however, the emails, invoices, and payment structure provided Defendant ample notice that he was doing business in Texas. *See* Def.'s Dec. Supp. Mot. Dismiss, ECF No. 10. Defendant made payments to a Dallas bank. *Id.* at 3. Plaintiff's Texas address was provided in several emails and Defendant filled out a credit application that stated that any subsequent Credit Agreement would be performed in Grand Prairie, Texas. Pl.'s App. Exs. A-3, A-4, A-7, ECF No. 13. The invoices Plaintiff sent to Defendant included Plaintiff's address in Grand Prairie. Thus, Defendant's claim that he was unaware that he was doing business in Texas is undermined by these undisputed facts. *Id.*

In addition to the communications between the parties, the crux of their transactions occurred in Texas. Plaintiff received the canned goods in Laredo, Texas, where they would be inspected by FDA. Defendant wired money to Plaintiff's bank in Dallas, Texas. After release by the FDA and payment by Defendant, Plaintiff released the goods to Defendant who took title in Laredo at that time. This interaction was the extent of the physical contact between the two parties and it occurred exclusively in Texas.

Finally, when an out-of-state company reaches out to a Texas company through various methods of communication to begin a business relationship, that out-of-state company is purposefully availing itself to the benefits and protections of Texas law. *See Cent. Freight,* 322 F.3d at 382. Defendant acknowledged the business relationship developing with Plaintiff in an email where he exclaims his excitement about the "business

8

relationship" and "long lasting business partnership" between Plaintiff and Defendant. Pl.'s App. Ex. A-5, ECF No. 13.

By examining Defendant's contacts with Texas, as well as the course of conduct between Plaintiff and Defendant, the Court finds that Defendant took "purposeful and affirmative action" which caused foreseeable business activity in Texas. *See Cent. Freight*, 322 F.3d at 382–83 (citing *Burger King,* 471 U.S. at 474–76). Thus, the Court concludes that Defendant has sufficient minimum contacts with Texas and to reasonably have expected to be haled into court in Texas.

3. <u>Maintaining jurisdiction over Defendant would not offend the traditional notions of fair play and substantial justice.</u>

"Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Cent. Freight*, 322 F.3d at 384 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). After minimum contacts have been shown, it is rare that the assertion of jurisdiction is unfair. *McFadin*, 587 F.3d at 759-60. To determine whether the exercise of jurisdiction is fair and reasonable, the court must balance:

> (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies.

*Luv N' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006); *see also Burger King*, 471 U.S. at 476-77.

Defendant has argued that it will be a burden to litigate in Texas because he has witnesses in California and must do testing of products in California. *See* Def.'s Br. Supp. Mot. Dismiss 13, ECF No. 9. But Defendant has already demonstrated an ability and a willingness to travel to Texas by receiving products in Texas multiple times over the course of his relationship with Plaintiff. Plaintiff's legitimate interest in convenient and effective relief is certainly satisfied by litigating in a Texas forum. Texas, moreover, has an interest in overseeing the resolution of the present dispute because it involves a Texas-based company. *See Wien Air Alaska, Inc.*, 195 F.3d at 215 ("Texas clearly has an interest because the dispute involves a corporation whose principal place of business is in Texas. . ."). Given that Plaintiff's witnesses and evidence are likely located in Texas, it would not be judicially inefficient to resolve the case here. *See id*. Balancing these factors, Defendant has failed to prove that the Court exercising jurisdiction over him would offend the traditional notions of fair play or substantial justice.

Because the three-prong test for specific personal jurisdiction has been satisfied, the Court finds that it should and hereby does **DENY** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

### B. Venue is proper in the Northern District of Texas.

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(1)–(2). Defendant devotes one paragraph to argue that venue is improper in the Northern District of Texas and that the

case should be transferred to the Northern District of California. *See* Def.'s Br. Supp. Mot. Dismiss 13, ECF No. 9. This court cannot agree. Defendant made payments to Plaintiff's bank in Dallas, Plaintiff shipped and stored rejected products at its principal place of business in Grand Prairie, Texas, and Defendant contacted Plaintiff at their Grand Prairie location. It follows a substantial part of the events giving rise to Plaintiff's claim occurred in the Northern District of Texas. Accordingly, the Court finds that it should and hereby does **DENY** Defendant's Motion to Dismiss for Improper Venue.

**C. The Court should not transfer this case to the Northern District of California.**

Defendant finally argues that the Court should transfer venue to the Northern District of California. While the Northern District of California would also be a proper venue for this action, as it is where Defendant resides and maintains his principal place of business, Defendant must meet the heavy burden of proving the transferee venue is "clearly more convenient than the venue chosen by plaintiff." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008). The "court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other." *Sivertson v. Clinton,* No. 3:11–cv–0836–D, 2011 WL 4100958, *3 (N.D. Tex. Sept 14, 2011) (Fitzwater, C.J.). Furthermore, defendant must demonstrate that on balance the public and private interest factors weigh in favor of transfer. *In re Volkswagen,* 545 F.3d at 315. Defendant outlines some of the private interest factors regarding travel requirements and litigating in Texas as opposed to California. However, this would do nothing more than shift the burden from Defendant to Plaintiff, who would then have to travel to California with its witnesses for litigation. Defendant has also not addressed any public interest factors that weigh in favor

of transferring this case to California. Therefore, the Court finds Defendant has not satisfied the heavy burden to transfer venue and Defendant's Motion to Transfer Venue is hereby **DENIED.**

IV.  **CONCLUSION**

For the foregoing reasons, the Court finds that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and in the Alternate Transfer Venue (ECF No. 8), should be and is hereby **DENIED.**

**SO ORDERED** on this **26th day** of **September, 2019**.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE